DECISION AND JUDGMENT ENTRY
These appeals are before the court from the Lucas County Court of Common Pleas, wherein, appellants were each convicted and sentenced for attempting to promote prostitution, in violation of R.C. 2923.03 and2907.22(A)(1) and (B). Because we find that the charge of which appellants were convicted is neither unconstitutionally vague nor violative of their equal protection rights, we affirm.
The facts giving rise to these appeals are as follows.
In December 2000, Toledo police received information that at Lorain's, a lingerie modeling studio located in Toledo, Lucas County, Ohio, sexual activity was taking place between the customers and models for an additional fee. Surveillance of Lorain's commenced.
On December 13, 2000, two undercover officers went to the establishment and were greeted by appellant, Denise Poirier, who identified herself as a manager. They were charged $100 each for the session they selected and were permitted and did touch the models' breasts.
On December 14, 2000, an undercover officer went to Lorain's. He was greeted by appellant, James Daniel, also a manager. The officer paid $100 and was permitted and did touch the model's breasts.
Again, on December 14, 2000, an undercover police officer entered the establishment and was greeted by a manager possibly with the name Kimberly (appellant Kimberly Klima.) She stated to the officer that for $100 he was permitted to touch the model's breasts. The officer paid the stated sum and touched the model's breasts.
Undercover officers visited the establishment on December 16, 2000, and December 18, 2000, and the same scenario took place. Based upon the information set forth above, a search warrant was obtained on December 20, 2000.
On February 26, 2001, appellants Poirier, Klima and Daniel were indicted on multiple counts of promoting prostitution, in violation of R.C. 2907.22(A)(1) and (B). On March 22, 2001, the appellants entered not guilty pleas to the charges.
Appellants filed a motion to dismiss on April 12, 2001. In their motion, appellants argued that R.C. 2907.22 and the statutory definitions relied upon violated the Equal Protection and Due Process Clauses of the United States and Ohio Constitutions. The court denied the motion on July 19, 2001.
Following the court's denial of the motion to dismiss, appellants Poirier and Klima entered pleas of no contest to two counts of the reduced charge of attempting to promote prostitution, in violation of R.C. 2923.02 and R.C. 2907.22. Daniel entered a no contest plea to one count of attempting to promote prostitution. The pleas were accepted and findings of guilt were made. These appeals timely followed.
Appellants raise the following assignment of error:
 "The trial court erred when it denied Appellants' Motion to Dismiss and, thereafter, found each of the Appellants guilty of attempted promoting prostitution. R.C. §§ 2923.02/2907.22, after a plea of no contest to the charges."
Appellants, similar to the arguments raised in the trial court, argue on appeal that: (1) R.C. 2907.22 violates the Equal Protection Clause because it makes a gender-based classification that is not substantially related to an important government objective and; (2) that the statute violates the Due Process Clause because appellants had no notice that they could be charged with managing a brothel, the statute is ambiguous, and that the statutory definition of "sexual contact" is unconstitutionally vague.
We first set forth the relevant statute and statutory definitions:
R.C. 2907.22 provides, in part:
"(A) No person shall knowingly:
 "(1) Establish, maintain, operate, manage, supervise, control, or have an interest in a brothel;
 "(2) Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire;
 "(3) Transport another, or cause another to be transported across the boundary of this state or of any county in this state, in order to facilitate the other person's engaging in sexual activity for hire;
 "(4) For the purpose of violating or facilitating a violation of this section, induce or procure another to engage in sexual activity for hire."
R.C. 2907.01(C) defines "sexual activity" as "sexual conduct or sexual contact, or both." R.C. 2907.01(B) defines "sexual contact" as:
 "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
Further, "prostitute" is defined under R.C. 2907.01(D) as "a male or female who promiscuously engages in sexual activity for hire, regardless of whether the hire is paid to the prostitute or to another."
Appellants first contend that the statutory definition of "sexual contact," set forth in R.C. 2907.01(B) and necessary for appellants finding of guilt under R.C. 2907.22, violates the Equal Protection Clause because it limits criminal liability to the touching of a female breast, not a male breast which may also be touched for the purpose of sexual arousal. Appellants contend that because the classification is gender-based, the state must provide an "exceedingly pervasive" reason behind the statute's objective.
We agree that gender-based classifications are afforded intermediate scrutiny in that the state must show "at least that the classification serves an important governmental objective and that the discriminatory means employed are substantially related to those objectives." UnitedStates v. Virginia (1996), 518 U.S. 515, 531.
Here, the state contends that, rightly or wrongly, our society continues to recognize a fundamental difference between male and female breasts. Thus, governmental distinction between male and female breasts is substantially related to preservation of the public decorum, decency and morals. The state further contends that R.C. 2907.01(B), while specifically listing the female breast, also includes a general prohibition against the touching of an "erogenous zone" which could, conceivably, include the male breast.
Upon review of the statutory definition of "sexual contact" we agree with the state that erogenous zones are not limited to those explicitly enumerated. Under this reasoning, and under a certain factual scenario, a male breast could be considered an erogenous zone if, as R.C. 2901.01(B) provides, it is touched "for the purpose of sexually arousing or gratifying either person."
We further note that the reason the female breast was explicitly enumerated as an "erogenous zone" is the fact that female breasts are anatomically distinct and our society has viewed the public display of female breasts far more differently than male breasts. The female breast has traditionally been viewed as an erogenous zone. Because of the anatomical and societal differences, the government has an interest in preservation of the public decorum, decency and morals. See Buzzetti v.New York (C.A. 2 1998), 140 F.3d 134; Hang On, Inc. v. Arlington (C.A.5 1995), 65 F.3d 1248; United States v. Biocic (C.A. 4 1991), 928 F.2d 112. Thus, we reject appellants' arguments as to the denial of equal protection.
Appellants' primary due process argument is that the term "brothel" is not statutorily defined and the definition of the term "erogenous zone" as set forth in the definition of "sexual contact," is vague and, thus, a defendant would not have proper notice that his conduct could result in criminal sanctions.
Regarding the term "brothel" we note that because it is undefined by statute, it must be construed according to the rules of grammar and common usage. State v. Coburn (1992), 84 Ohio App.3d 170, 173; R.C. 1.42. "Brothel" is defined as being synonymous with the word "bordello." Marriam Webster's Collegiate Dictionary (10 Ed. 1996) 146. "Bordello" is defined as "a building in which prostitutes are available." Id. at 132. "Prostitute" is, however, defined under R.C. 2907.01(D) as "a male or female who promiscuously engages in sexual activity for hire * * *." In turn, the statute provides that sexual activity is synonymous with "sexual contact" which includes the touching of a female breast for sexual arousal or gratification. Thus, included within the definition of a brothel is a female who permits another to touch her breasts for money. Accordingly, we find that appellants had the requisite notice that they could be charged with managing a brothel.
Appellants also argue that the definition of "sexual contact," is void for vagueness. Specifically, appellants contend that the definition of "sexual contact," is imprecise in that it includes "any touching of an erogenous zone of another * * *." Thus, appellants argue that a defendant would not know what was a prohibited "erogenous zone" until determined by a jury. We find that we need not reach this issue because appellants' crimes consisted of managing a brothel wherein, female "models" permitted customers to touch their breasts for money. The female breast is one of the five "erogenous zones" specifically enumerated in the statute. Thus, as applied to appellants, the prohibition in the statute was perfectly clear.
We now turn to appellants' argument that R.C. 2907.22 is ambiguous. Appellants contend that because it is unclear whether the statute was intended to be read conjunctively or disjunctively, the rule of leniency requires that it be read conjunctively. The state counters that statutes are to be read so as to give effect to legislative intent when possible and that a conjunctive reading of the instant statute is "nonsensical."
It is well-established that legislative enactments are entitled to a strong presumption of constitutionality. State v. Collier (1991),62 Ohio St.3d 267, 269. Further, R.C. 1.47 provides that in enacting a statute, it is presumed that compliance with the constitution is intended, the entire statute is intended to be effective, and "a just and reasonable result is intended * * *."
Regarding criminal statutes, R.C. 2901.04(A) provides that such statutes are to be "strictly construed against the state, and liberally construed in favor of the accused." "However, `the canon in favor of strict construction of criminal statutes is not an obstinate rule which overrides common sense and evident statutory purpose.'" State v. Hurd
(2000), 89 Ohio St.3d 616, 618, quoting State v. Sway (1984),15 Ohio St.3d 112, 115.
In the present case, a conjunctive reading of R.C. 2907.22 would require that the state prove that an individual knowingly did all of the following:
 "(1) Establish, maintain, operate, manage, supervise, control, or have an interest in a brothel;
 "(2) Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire;
 "(3) Transport another, or cause another to be transported across the boundary of this state or of any county in this state, in order to facilitate the other person's engaging in sexual activity for hire;
 "(4) For the purpose of violating or facilitating a violation of this section, induce or procure another to engage in sexual activity for hire."
Upon review of the above statute and similar statutes, we find that the legislature most certainly did not intend to place such an onerous burden on the state. The only logical reading of the statute requires that it be read disjunctively. We, thus, reject appellants' argument.
Based on the foregoing, we find appellants' sole assignment of error not well-taken.
On consideration whereof, we find that appellants were not prejudiced or prevented from having a fair proceeding, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of these appeals are assessed to appellants.
JUDGMENT AFFIRMED.
Richard W. Knepper, J, and Mark L. Pietrykowski, P.J., CONCUR.
James R. Sherck, J., dissents